# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: 17-cv-00531 |
| v. | ) |
| MARIKA MARAGHKIS KATHOLOS, | ) |
| Defendant. | ) |

## COMPLAINT

The plaintiff United States of America (the "United States"), with the authorization of the Secretary of the Treasury and at the direction of the Attorney General of the United States, brings this action under 31 U.S.C. § 3711(g)(4)(C) to collect outstanding civil penalties, along with associated late-payment penalties and interest, assessed against the defendant Marika Maraghkis Katholos ("Ms. Katholos") for her failure to timely report her financial interest in and signature authority over a foreign bank or other financial account during the 2007 calendar year as required by 31 U.S.C. § 5314 and its implementing regulations. In support of its complaint, the United States alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355(a).

2. Ms. Katholos was born in New York in 1971, and is a dual citizen of Greece and United States, and her last known address is Avolons 3G, Voula, Greece, 16673.

3. Venue is proper under 28 U.S.C. § 1391.

1

*Foreign Bank Accounts and Reporting*

4. Taxpayers with an interest in, or signature or other authority over, foreign financial accounts whose aggregate value exceeded $10,000 at any time during a given year must report their account(s) by filing a form reporting the foreign account, TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR").

5. UBS AG ("UBS") is a global financial services company, incorporated in the Canton of Zurich, and co-headquartered in Zürich and Basel. UBS provides wealth management, asset management, and investment banking and other services for private, corporate, and institutional clients worldwide. In 2008, UBS became embroiled in a global tax evasion controversy. Specifically, UBS directed its North American sales force to recruit wealthy U.S. clients by offering them a vehicle to conceal their ownership of assets held offshore by creating nominee entities and then filing IRS forms falsely claiming that the entities were the owners of the accounts.

6. The Internal Revenue Service (the "IRS") uses a John Doe summons to obtain information about possible tax fraud by people whose identities are unknown. On June 30, 2008, the United States Justice Department filed papers seeking an order from a federal court in Miami, Fla., authorizing the IRS to use a John Doe summons to request information from UBS about U.S. taxpayers who may be using Swiss bank accounts to evade federal income taxes.

7. As a result of a John Doe summons, the United States received information regarding Ms. Katholos's Foreign Bank Account.

*Background Regarding Ms. Katholos's Foreign Bank Account*

8. Ms. Katholos's father, Theodore Katholos, Sr., who is deceased, was also a dual citizen of the United States and Greece. He owned and operated Allstate General Contracting in

Buffalo, New York. Allstate General Contracting started in 1966 as a painting company and in 1980 expanded into general contracting.

9. Mr. Katholos had two partners, who are also deceased. The corporation is currently operated by the Ms. Katholos's brother, Theodore Katholos II.

10. On February 28, 2005, the Storchen Family Foundation was formed in Vaduz, Liechtenstein.

11. On March 3, 2005, on the Form A, "Verification of the beneficial owner's identity," the following beneficial owners of the Storchen Family Foundation for the UBS account ending in 36795 are identified: Theodore Katholos's two daughters, Ms. Katholos and Nicole Ciancio; his son, Theodore Katholos II; his granddaughter; and his wife, Nancy Katholos. The Form A was signed by members of the board. Also on that date, members of the board instructed UBS in the "Basic document for account/custody account relationship (firms, corporations, and other institutions)" to send all correspondence to Consilia Anstalt in Vaduz, with a duplicate copy to Rickenbach and Partners in Zollikon. English was selected as the preferred language of the correspondence.

12. On March 3, 2005, an "Authorized signatories" form was signed by members of the board authorizing the members to deposit, buy and sell, pledge, loan, convert and withdraw securities.

13. On March 3, 2005, members of the board signed a form entitled "Waiver of right to invest in US securities," an Asset Management Agreement, and an UBS Active Portfolio Supervision Agreement.

14. On March 9, 2005, a "Domiciliary Companies" decision sheet was prepared by UBS identifying Liechtenstein as the tax haven.

3

15. On August 18, 2005, Dr. Matthias W. Rickenbach, member of the board in Vaduz, instructed UBS in a UBS Active Portfolio Supervision Agreement to invest moderately and selected the United States' dollar ("USD") as the reference currency.

16. On December 23, 2005, Ms. Katholos and others had dinner in Athens with UBS client advisors Dr. Matthias Rickenbach and Jonathan Guest, and discussed a new account. The parties discussed the creation of a Hong Kong entity to be the accountholder.

17. On December 29, 2005, Glen R. Gisler, from UBS signed the Certificate of Incorporation for Storchen Finance Limited registering the office of a company in Hong Kong, with a UBS account ending in 65569.

18. On January 3, 2006, on the Form A, "Verification of the beneficial owner's identity," the following beneficial owners of the Storchen Finance Limited, for the account ending in 65569, are identified: Ms. Katholos; [redacted name of minor]; Nicole Ciancio; Theodore Katholos II; and Nancy Katholos.

19. In addition, on said date and on June 1, 2006, Dr. Matthias W. Rickenbach and Dr. Martin Batliner, Directors, signed several Corporations and Complex Trusts Certifications of Beneficial Owner and Non-US Person Status for the primary and sub-accounts, indicating that Storchen Finance Limited was a corporation organized in Hong Kong.

20. Further, on January 3, 2006, the documents were signed by member(s) of the Board, *inter alia*, instructing UBS to send all correspondence to Consilia Anstalt in Vaduz with a duplicate copy to Rickenbach and Partners in Zollikon.

21. On January 18, 2006, a "Base Document for Non-U.S. Domiciliary Companies for U.S. Tax Withholding" was prepared indicating that the accountholder, Storchen Finance Limited, is domiciled in Hong Kong and wants to invest in U.S. securities.

22. On January 18, 2006, a "Domiciliary Companies decision" sheet was prepared by UBS indicating that the tax haven will be Hong Kong.

23. In February 2006, UBS account ending 36795 was closed when the balance in the account was transferred to the UBS account ending 65569.

24. On February 14, 2006, Dr. Matthias W. Rickenbach, Director, signed an Asset Management Agreement instructing UBS to invest in aggressive securities for the account ending in 65569.S3 and account ending in 265569.S4. The reference currency is in USD.

25. During the period February 2006 through April 2008, based on the UBS Payment Orders, emails, and debit advice statements, the following transfers were made from the UBS account ending in 65569 (the "UBS Account No. 65569):

| Date | Amount | Transferee Bank |
|---|---|---|
| 2/4/2006 | $350,000.00 | Storchen Finance LTD, Account # 65569.14X |
| 2/14/2006 | $3,500,000.00 | Storchen Finance LTD, Account # 65569.51W |
| 2/28/2006 | $10,000.00 | Alpha Bank AE, Agens, Greece, Beneficiary: Marika Katholos |
| 5/15/2006 | $195,000.00 | OTP Bank Romania S.A., R0-011017 Bucharest, Panagiotis Diamantis |
| 10/2/2006 | $812,500.00 | Beneficiary Bank, Account 60385.01Z   Swift |
| 2/27/2007 | $35,000.00 | Account #015379, Athens, Greece |
| 4/10/2007 | $500,000.00 | Invest CHF for six months with rate of 3.15%, Account # 65569.90P |
| 4/26/2007 | $195,000.00 | Invest Euro for one year with rate of 5.15%, Account # 65569.60A |
| 6/11/2007 | $50,000.00 | Bank of Cyprus Public Co, Account # 000948 |
| 8/28/2007 | $7,850.00 | Storchen Finance LTD, Account # 65569.77P |
| 10/16/2007 | $507,525.00 | Invest CHF for 9 months with rate of 3.38%, Account # 65569.80 |

| Date | Amount | Transferee Bank |
|---|---|---|
| 11/27/2007 | $457,560.00 | Bank of Cyprus Public Co, CY-NICOSIA, Account # 000948, Beneficiary: Panagiotis Diamandis |
| 12/6/2007 | $10,000.00 | Alpha Bank AE, GR-102 52 Athens, Swift Account # 015379, Beneficiary: Marika Katholos |
| 1/25/2008 | $10,605.89 | Storchen Finance LTD, Account # 65569.60A |
| 1/25/2008 | $40,120.09 | Storchen Finance LTD, Account # 65569.60A |
| 2/6/2008 | $47,600.00 | Storchen Finance LTD, Account # 65569.77P |
| 3/4/2008 | $36,666.00 | Storchen Finance LTD, Account # 65569.12V |
| 3/4/2008 | $26,343.88 | Storchen Finance LTD, Account # 65569.12V |
| 3/4/2008 | $9,796.80 | Storchen Finance LTD, Account # 65569.12V |
| 3/20/2008 | $10,000.00 | Alpha Bank AE, GR-102 52 Athens, Account # 15379, Beneficiary: Marika Katholos |
| 3/26/2008 | $5,000,000.00 | Bank of Cyprus Public Co, CY-NICOSIA, Account # 10806, Basak Holdings, LTD, B.V.I. |
| 3/28/2008 | $1,296,700.58 | Storchen Finance LTD, Account # 65569.22M |
| 4/16/2008 | $50,948.61 | Storchen Finance LTD, Account # 65569.22M |
| 4/16/2008 | $111,268.95 | Storchen finance LTD, Account # 65569.22M |

26. On January 24, 2008, Dr. Matthias W. Rickenbach, Director, signed a Declaration regarding U.S. open-end mutual funds, authorizing UBS to disclose all information required under the Securities and Exchange Commission to be disclosed to the U.S. authorities or to other third parties.

*Ms. Katholos's Controlled/Controls the UBS Account No. 65569*

27. Ms. Katholos controls/controlled the UBS Account No. 65569. She was involved with the decision making regarding the performance and investments of the UBS Account No. 65569, and she also instructed UBS to make a transfer from the account to Greece so that she could invest in the Romanian real estate market.

28. The IRS assigned an agent to the examine Ms. Katholos's account. As part of the examination, the IRS agent corresponded with Ms. Katholos's counsel.

29. The IRS agent received a letter dated August 2, 2012 from Ms. Katholos's counsel stating that Ms. Katholos's siblings never travelled to Vaduz or Hong Kong and never

6

executed any documents relating to the foreign bank accounts. The letter also states that, the siblings had provided copies of their passports to Ms. Katholos so that she could arrange overseas travel.

30. Additionally, the August 2, 2012 letter states that Ms. Katholos established a Liechtenstein foundation and named her siblings and mother as contingent beneficiaries of the foundation. The letter further stated that:

> "While [the firm does] not have the English version of the foundation's 'statute' and bylaws, [the firm's] understanding is that Theodore, Nicole and Nancy [*i.e.*, Ms. Katholos's relatives] are *contingent beneficiaries* of the foundation. This means that they 1) did not establish the foundation; 2) do not own or control the foundation or its assets; 3) do not have a present ownership in the foundation; and 4) only have an interest in the foundation upon the death of the taxpayer. According to [Ms. Katholos], she did not inform Theodore, Nicole [*i.e.*, her siblings] or Nancy [*i.e.*, her mother] about the foundation.

31. As part of the IRS's examination, an agent interviewed the Ms. Katholos's return preparer, Charles Koelemeyer, on August 12, 2013. During the interview, Mr. Koelemeyer stated, *inter alia*, that:

(a) He had been preparing returns for the Katholos family for fifteen-plus years;

(b) He prepared returns for Ms. Katholos, her two siblings, and her parents;

(c) His firm mails out checklists each year to their clients, and the Katholos family completed them in most cases;

(d) The checklist included the following questions: "Do you have foreign income or assets, and if yes, was the balance over $10,000?";

(e) If the checklist or items on it were incomplete, he would verbally ask his clients for the answers to the questions;

(f) When the returns were completed, he would either mail them to his clients or they would come in and sign them;

(g) He would review any large items or matters that were different from prior years with the respective clients;

(h) He had just completed the 2012 returns for all of the Katholos family except for Ms. Katholos;

(i) He is aware of the reporting requirements for foreign accounts and trusts;

(j) He has several clients for which he prepared the appropriate reports; for example, clients that have Canadian accounts with balances over $10,000;

(k) In all tax years up to and including 2012, Ms. Katholos's parents indicated that they had no foreign accounts or assets;

(l) Ms. Katholos had recently emailed him and confirmed that her parents had no assets overseas;

(m) When he was filing Ms. Katholos's return for 2008, he was made aware of her foreign account with UBS by her counsel, who prepared the FBAR forms for her for 2008 and 2009, and the Form 8939 for 2011;

(n) Ms. Katholos is now taking care of her parents in Greece as her father is ill. He stated that he used a filing status of Head of Household for Ms. Katholos as she has a daughter, her husband is not a citizen of the United States, and her husband does not have a TIN (tax identification number); and

(p) Mr. Koelemeyer added that he had never heard the name "Storchen."

***Ms. Katholos's Failure to Report the UBS Account No. 65569***

32. Ms. Katholos filed Forms 1040, U.S. Individual Income Tax Returns, for tax years 2006 and 2007, in which she failed to include earnings and interest income from the UBS account. The original returns for the years at issue were prepared by a CPA in the United States. On such returns, Part III of Schedule B contains questions on lines 7a and 8 relating to interest in or signature authority over foreign accounts and trusts. For tax years 2006 and 2007, Ms. Katholos checked the box "No" for both questions.

33. According to a FinCEN database query, Ms. Katholos did not file any FBARs for 2006 or 2007. Ms. Katholos did, however, timely file an FBAR for calendar years 2008, 2009, and 2013. Ms. Katholos's FBAR for 2008 states "Signature Not Present" on the first page. On the second page of the FBARs for 2008 and 2009, "See Attached Statement" is indicated for the

name of the financial institution in which the account is held, the account number, mailing address, city, and postal code.

34. In addition, the Alpha Bank in Greece is then reported below the "See Attached Statement," indicating a maximum value of $48,924 for calendar year 2008 and $12,645 for calendar year 2009. For calendar year 2009, a Banque Heritage account located in Geneva is reported on the first page of the FBAR in the amount of $2,575,221. On the FBAR filed for calendar year 2013, Ms. Katholos reported eight foreign accounts, one of which was UBS Account No. 65569. Ms. Katholos indicated that the maximum value in the UBS account was $507,298. The other accounts reported amounts ranging from $5,744 to $1,050,000 (the highest balance being reported as a bond account).

35. The UBS Account No. 65569 had the following year-end balances based on the UBS Statement of Assets provided in the treaty exchange:

| YEAR | AMOUNT |
|---|---|
| 2005 – *(Then UBS Account No. 36795)* | $11,809,281 |
| 2006 | $11,822,503 |
| 2007 | $13,545,425 |
| 2008 | $ 3,004,982 |

36. Ms. Katholos failed to report the other income, taxable interest, and ordinary dividends from the UBS Account No. 65569 on her returns filed for tax years 2007 and 2008. According to the Form 4549, dated October 30, 2014, the income tax deficiencies for such years based on the failure to report these earnings are as follows:

| Year Ended | Increase in Tax Due |
|---|---|
| December 31, 2007 | $ 46,340.47 |
| December 31, 2008 | $ 37,065.00 |

37. Ms. Katholos also failed to report the following other income, taxable interest, and ordinary dividends from the UBS account on her returns filed for tax years 2007 and 2008:

9

| Item / Tax Year | 2007 | 2008 |
|---|---|---|
| Other income | $45,980.41 | $18,510.76 |
| Interest income | 80,010.00 | 40,210.00 |
| Ordinary Div. | 30,890.00 | 49,457.00 |

38. On May 28, 2015, an IRS agent notified Ms. Katholos of the IRS's determination to impose the willful FBAR penalty by issuance of Letter 3709. The FBAR penalty was assessed on June 15, 2015.

## Reduce FBAR Civil Penalties to Judgment

39. The allegations of paragraphs 1 and 38, above, are re-alleged and incorporated by reference in this count.

40. Section 5314 of Title 31 of the U.S. Code and the implementing regulations promulgated thereunder, requires a person to keep records and file reports when that person maintains a relation with a foreign financial agency. Such reports must be filed with the IRS. Section 5321(a)(5) of Title 31 provides for the imposition of civil penalties for willful failure to comply with the reporting requirements of section 5314.

41. Ms. Katholos had a financial interest in and signature authority over UBS Account No. 65569 during the years 2006 through – at least – 2008.

42. The value of the UBS Account No. 65569 exceeded $10,000.00 at all times during 2007.

43. Ms. Katholos failed to timely file an FBAR for the 2007 calendar year by June 30, 2008, reporting her financial interest in and signature authority over the UBS Account No. 65569.

44. Ms. Katholos took steps to conceal or mislead as to sources of income by opening the UBS Account No. 65569.

45. Ms. Katholos was on inquiry notice of the duty to disclose the UBS Account No. 65569 to the United States for the 2007 calendar year due to specific language on her 2007 Scheduled B tax form, which directs filers to the FBAR filing instructions and requirements.

46. Ms. Katholos's failure to timely file an FBAR for the 2007 calendar year was willful.

47. The IRS assessed the FBAR penalty for the 2007 calendar year on June 15, 2015. This civil action to collect the FBAR penalty, and the associated penalties and interest, is timely under 31 U.S.C. § 5321(b)(2).

48. The 2007 FBAR penalty assessed against Ms. Katholos remains unpaid, and the total balance due on the penalties, along with statutory additions and interest, including late-payment penalties assessed pursuant to 31 U.S.C. § 3717, is $4,474,320.29 as of December 2, 2016.

WHEREFORE, the plaintiff United States of America requests that this Court:

(1) Enter judgment in favor of the United States and against the defendant Marika Maraghkis Katholos in the amount of $4,474,320.29, plus statutory additions and interest from December 2, 2016, for the unpaid 2007 FBAR penalty assessed against her; and

(2) Award the United States its costs and such further relief as the Court deems just and proper.

**JURY DEMAND**

The plaintiff United States of America demands a trial by jury on all issues so triable.

(*Signature line to follow*)

(*Signature line followed*)　　　　　　　　Respectfully submitted

　　　　　　　　　　　　　　　　　　　　DAVID A. HUBBERT
　　　　　　　　　　　　　　　　　　　　Acting Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice, Tax Division


　　　　　　　　　　　　　　　　　　　　*/s/ W. Damon Dennis*
　　　　　　　　　　　　　　　　　　　　W. DAMON DENNIS
　　　　　　　　　　　　　　　　　　　　Trial Attorney, Tax Division
　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　　　　　P.O. Box 55
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20044
　　　　　　　　　　　　　　　　　　　　Telephone: (202) 616-1460
　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 514-5238
　　　　　　　　　　　　　　　　　　　　E-mail: w.damon.dennis@usdoj.gov