# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: 17-cv-00531 |
| v. | ) |
| MARIKA MARAGHKIS KATHOLOS, | ) |
| Defendant. | ) |

## ANSWER TO THE COMPLAINT

Defendant Marika Katholos ("Defendant" or "Marika") answers the Complaint filed by the United States America (the "Government") as follows.

The unnumbered introductory first paragraph of the Complaint states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied. The introductory first paragraph and case caption incorrectly name Marika, whose married name is Marika Maragakis Katholos, as "Marika Maraghkis Katholos."

The headings used throughout the Complaint state legal conclusions not requiring a response. Out of an abundance of caution, the allegations in the headings are denied.

1. The allegations are denied for lack of sufficient information to form a belief therein.

2. The allegations are generally admitted, although Marika's correct address is Avlonos 3G, Voula, Greece 16673.

3. The allegation that venue is proper is admitted; however, Marika is not a resident of this district and has been a resident of Greece since 1994.

4. The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied as applied to Marika.

5. The allegations are denied for lack of sufficient information to form a belief therein.

6. The allegations are denied for lack of sufficient information to form a belief therein. The paragraph also states legal conclusions not requiring a response.

7. The allegation is denied for lack of sufficient information to form a belief therein.

8. The allegations are admitted.

9. The allegations are admitted.

10. The allegations are admitted; however, any allegation (express or implied) that Marika signed documents to form the foundation is denied.

11. The allegations that a "Form A" as described in paragraph 11 exists are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

12. The allegations that a form as described in paragraph 12 was signed are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

13. The allegations that a form as described in paragraph 13 was signed are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

14. The allegations are denied for lack of sufficient information to form a belief therein.

15. The allegations that a form as described in paragraph 15 was signed are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

16. The allegations are admitted; however, any allegation (express or implied) that U.S. tax issues were discussed is denied.

17. The allegations are admitted; however, any allegation (express or implied) that Marika signed documents to form the corporation is denied.

18. The allegations that a "Form A" as described in paragraph 18 exists are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

19. The allegations that the forms described in paragraph 19 were signed are admitted; however, any allegation (express or implied) that Marika signed these forms is denied.

20. The allegations are denied for lack of sufficient information to form a belief therein.

21. The allegations that the form described in paragraph 21 was signed are admitted; however, any allegation (express or implied) that Marika signed this Form is denied.

22. The allegations are denied for lack of sufficient information to form a belief therein.

23. With the exception of the date of the transfer, for which Defendant lacks sufficient information, the allegations are admitted.

24. The allegations that the form described in paragraph 24 was signed are admitted; however, any allegation (express or implied) that Marika signed this Form or made the selections therein is denied.

25. The allegations are denied for lack of sufficient information to form a belief therein. To the extent this paragraph alleges (expressly or implicitly) that all funds described in the transfers belong to Marika or the Katholos family, the allegation is denied.

26. The allegations are denied for lack of sufficient information to form a belief therein.

27. The first sentence is a legal conclusion not requiring a response. Out of an abundance of caution, the first sentence is denied. Regarding the second sentence, Marika admits she was involved in—but not finally responsible for—decision-making regarding the

UBS account(s), and admits there was an investment in the Romanian real estate market. The remainder of the paragraph is denied.

28. The allegations are admitted.

29. The allegations are admitted.

30. The allegations are admitted, although the language in the block quote is in part a paraphrase (and not a direct quote) from the August 2, 2012 letter.

31. The allegations in this paragraph and its subparagraphs are denied for lack of sufficient information to form a belief therein. Further, to the extent this paragraph or its subparagraphs purport to discuss communications between Marika and her U.S. tax advisors, Marika asserts all relevant privileges and protections related to this advice.

32. The allegation that federal income tax returns for 2006 and 2007 were filed for Marika is admitted, and the allegation that Marika herself filed them and checked the box on Schedule B is denied. At the time of the filing of the Complaint, the Government possessed information demonstrating that Marika did not sign the 2006 or 2007 federal income tax returns described in this paragraph.

33. As to the descriptions of FBARs not at issue in this case and filed years after the relevant events, the allegation that FBARs were filed for Marika for 2008, 2009, and 2013 are admitted. The remainder of the paragraph is denied for lack of sufficient information to form a belief therein.

34. Regarding the description of the 2008 FBAR not at issue in this case, the allegation in the first sentence is admitted. Regarding the descriptions of the 2009 and 2013 FBARs, not at issue in this case and filed years after the relevant events, the allegations in this paragraph are admitted.

35. The allegations in this paragraph are denied for lack of sufficient information to form a belief therein.

36. Regarding the first sentence, the allegations are denied for lack of sufficient information to form a belief therein. Regarding the second sentence, the allegation that the IRS prepared an examination report asserting income tax deficiencies is admitted; the remainder of the paragraph is denied.

37. The allegations are denied.

38. The allegations in this paragraph are denied for lack of sufficient information to form a belief therein.

39. The paragraph makes no allegations to admit or deny. Out of an abundance of caution, the paragraph is denied.

40. The allegations are legal conclusions not requiring a response. Out of an abundance of caution, they are denied as applied to Marika.

41. The allegations are admitted.

42. The allegations are admitted.

43. The allegation that no FBAR was timely filed for Marika for 2007 is admitted; the remaining allegations in this paragraph are denied.

44. The allegations are denied.

45. The allegations are denied, including the allegation that Marika herself signed or reviewed the 2007 federal income tax return. At the time of the filing of the Complaint, the Government possessed information demonstrating that Marika did not sign the 2007 federal income tax return described in this paragraph.

46. The allegations are legal conclusions not requiring a response. Alternatively, they

are denied.

47. The allegations are denied for lack of sufficient information to form a belief therein.

The allegations in the prayer for relief and the jury demand are denied, to the extent a response is required.

## AFFIRMATIVE DEFENSE NO. 1: MARIKA DID NOT ACT WILLFULLY

48. The administrative record and Complaint fail to establish any factual basis for assertion of a willful FBAR penalty against Marika. 31 U.S.C. § 5321(a)(5)(C) imposes a civil money penalty for willful failures to file certain reports required to be filed under 31 U.S.C. § 5314, including the FBAR. As outlined in the statute, the amount of the willful penalty may be 50 percent of the high balance in the account at the time of the alleged failure to file the FBAR form. On the other hand, if a taxpayer does not act willfully—for example, if she failed to file the FBAR because she did not know the form existed or was required to be filed—the civil money penalty under 31 U.S.C. § 5321 shall not be greater than $10,000.

49. Willfulness is a required element of the penalty asserted by the Government against Marika. The Government's effort to reduce the FBAR penalties to judgment fails because the Government cannot meet its heavy burden to establish a necessary element for enforcement of the penalty—that Marika knew of the FBAR filing obligation and willfully failed to file the form for the 2007 tax year.

50. The Complaint's case for willfulness appears to rest on three major factual allegations, all of which are either incorrect or misleading. First, the Government alleges that Marika was on "inquiry notice" about FBAR reporting because of a 2007 federal income tax return. At the time of the filing of the Complaint, however, the Government possessed

information demonstrating that Marika did not sign the 2007 federal income tax return that allegedly put her on "inquiry notice" regarding her FBAR obligations. Further demonstrating that she did not review this return, the 2007 return filed for Marika contains numerous, obvious errors: Marika's name is misspelled and her address is incorrectly given in Elma, New York.

51. Marika's history of filing U.S. returns since her move to Greece in 1994 demonstrates that she was not fully aware of the relevant U.S. tax rules for reporting income overseas. Prior to 2009, federal tax returns were filed for Marika to report her interests in family assets that generated income in the U.S., such as annuities or rental income from real estate. When there was no U.S. income in a particular year, returns generally were not filed. In many or most cases prior to early 2009, Marika did not see or sign federal tax returns filed for her.

52. Second, the Internal Revenue Service's ("IRS's") interview with Marika's return preparer Charles Koelemeyer, conducted more than four years after the relevant events, only demonstrates that he knew of FBAR reporting requirements well after the time period at issue. It does not demonstrate that he ever advised Marika about these requirements—or even that he ever spoke to her directly about taxes or U.S. reporting—prior to January 2009. Instead, once Marika learned of the relevant U.S. reporting requirements, she attempted to make a voluntary disclosure to the IRS in February 2009, months before the start of the formal Offshore Voluntary Disclosure Program. Marika's effort was rejected as untimely because, on information and belief, UBS had delivered her name to the IRS within one week prior to her disclosure.

53. Finally, the Government alleges that Swiss bankers took actions, including signing forms, to conceal the relevant accounts from U.S. authorities. These are simply not allegations that Marika acted willfully: the allegations describe actions taken by Swiss bankers, not by her and her family. Instead, the long history of Marika and her family in Greece

7

demonstrates that the UBS accounts were not set up for a U.S. tax-avoidance purpose. Marika moved to Greece in 1994, shortly after college, and has been a homemaker and caretaker of her children since that time. Marika's father Theodore Katholos (now deceased) ("Mr. Katholos") immigrated to the U.S. in the mid-1960s with a second-grade education in Greece, and became successful in the painting and contracting business in Buffalo, New York through hard work and determination, not through formal schooling. Mr. Katholos was largely unable to read or write in English. He was very successful in business, particularly given his background, but he lacked sophistication and training in tax matters. In the 1980s, Mr. Katholos seriously considered emigrating back to Greece, and so did Marika. When Mr. Katholos retired in 1997, he had intended to move back to Greece permanently.

54. The Katholos family set up accounts in Switzerland in 1998, moving their funds from Greek banks because of concerns about privacy and security. They felt there was a great risk that the Greek banks were corrupt, and that there were no true guarantees for deposits. Also, in dealings with Marika's and her husband George's local bank in Greece, there seemed not to be a policy on secrecy. Information on account values was easily discussed (basically, gossiped about) among employees, a great deal of whom were local residents. These concerns only heightened when Marika and George contemplated starting a family. Their first child was born in 1999, shortly after the Swiss accounts were established. The occurrences of kidnapping are unfortunately not so uncommon in Greece.

55. In dealings with the Swiss bank, Marika's father Theodore Katholos was the primary decision-maker. Marika had signatory authority because of Mr. Katholos' limited reading and writing skills and because she was the one member of the family located in Europe, with more convenient access to the bank.

56. In short, the security offered by the Swiss banking system—and not tax avoidance in the U.S.—was the motivating factor in setting up the relevant accounts. Marika's meetings and conversations with Swiss banking advisors are consistent with the purpose of opening the accounts in Switzerland—to ensure privacy and security for Katholos and Maragakis family assets, in contrast to the unstable Greek banking system where these assets had been previously held. There is no factual allegation in the Complaint (other than summary legal assertions) supporting a conclusion that the accounts were established for any U.S. tax purpose.

57. Further, the Government has failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 8 and 12(b)(6) because it has alleged no facts in the Complaint—beyond summary legal conclusions—that support a finding of willfulness.

58. Moreover, the administrative record is devoid of any reasoning supporting a finding that Marika acted willfully. In fact, the Internal Revenue Service's guidance regarding mitigation of the FBAR penalty fails to take into account the specific facts and circumstances of each case, and focuses solely on the high balance in the relevant financial accounts. *See* Internal Revenue Manual 4.26.16-1. Accordingly, the IRS assessment of the FBAR penalty against Marika is unreasonable, arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706.

**AFFIRMATIVE DEFENSE NO. 2:**
**THE PENALTY ASSESSMENT IS PROCEDURALLY DEFECTIVE**

59. The IRS has been delegated civil enforcement authority over the FBAR. See 31 CFR § 1010.810(g) (referencing a Memorandum of Agreement between the Financial Crimes Enforcement Network ("FinCEN") and the IRS). The IRS has established specific procedures for the examination, approval, and assessment of the FBAR penalty under 31 U.S.C. § 5321. See Internal Revenue Manual 4.26.16 and 4.26.17. For example, a willful FBAR penalty must be reviewed by the SB/SE Counsel FBAR Coordinator, and findings must be made supporting the

assertion of the penalty. *See* Internal Revenue Manual 4.26.17.4.3. The taxpayer has the right to administratively appeal an initial determination that the penalty should be assessed, and an IRS group manager must also make findings when approving the penalty. *See* Internal Revenue Manual 4.26.17.4.6. In addition, a series of notices and letters must be sent to the taxpayer before the penalty is assessed. *See* Internal Revenue Manual 4.26.17.

60. The Government's efforts to collect an FBAR penalty for Marika fail because the IRS's assessment of the FBAR penalty was procedurally defective. Based on the incomplete correspondence and notices that Marika and her counsel have received, it appears that the IRS may not have followed its own procedures in making the assessment of the FBAR penalty. As referenced above, the notices and reports that Marika received contain little to no reasoning supporting a willful FBAR penalty, also rendering the assessment procedurally defective. Because the IRS did not validly assess the FBAR penalty before the expiration of the relevant statute of limitations, the Government cannot reduce this penalty to judgment.

**AFFIRMATIVE DEFENSE NO. 3:**
**THE PENALTY IS BARRED BY THE RELEVANT STATUTE OF LIMITATIONS**

61. The deadline for an FBAR to be filed for Marika for the 2007 tax year would have been on or before June 30, 2008. Under 31 U.S.C. § 5321(b)(1), the Government was required to assess any FBAR penalty within six years of June 30, 2008, or by June 30, 2014.

62. There is no grant of statutory authority for extension of this statutory deadline. In the Complaint, paragraph 38, the Government alleges that the FBAR penalty for 2007 was assessed against Marika on June 15, 2015, after the expiration of the six-year statute of limitations. Accordingly, the Government is barred from collecting the FBAR penalty against Marika for the 2007 tax year because the assessment was made after the expiration of the

relevant statute of limitations under 31 U.S.C. § 5321(b)(1).

## AFFIRMATIVE DEFENSE NO. 4:
## THE PENALTY IS AN EXCESSIVE FINE UNDER THE EIGHTH AMENDMENT

63. The relevant statutes, 31 U.S.C. § 5321(a) and (b)(1), provide that a willful FBAR penalty of 50 percent of the balance in the relevant financial account may be assessed upon the same funds for each year within a six-year statute of limitations. As written, the statute essentially allows the Government to assess an FBAR penalty of 300 percent of the highest balance of a financial account—three times the entire value of the account.

64. In addition to the penalty at issue in this suit, the Internal Revenue Service is seeking to assess and collect other civil penalties from Marika under the Internal Revenue Code for the exact same funds at issue here.

65. The assessed FBAR penalty has been improperly imposed on the entire value of the UBS accounts. A substantial portion of these funds were owned by Marika's husband George Maragakis, and were not taxable or subject to penalties in the United States. George is a Greek citizen and not a U.S. taxpayer. In the late 1990s, the family initially moved their funds out of Greece into accounts held in the names of Marika, George, and Mr. Katholos at a different Swiss bank. In 2004 or thereabouts, these accounts were moved to UBS, also in their individual names. Upon instruction and advice of the Swiss bankers at UBS, the accounts were consolidated in early 2005 into the accounts at issue because the family was advised that this structure would allow for additional investment opportunities and flexibility. Thus, to the extent the calculation of the FBAR penalty is based upon amounts held in the Storchen accounts but actually owned by George, those amounts were never taxable in the United States, and should be excluded from any penalty calculation.

66. The FBAR penalty under 31 U.S.C. § 5321 and the penalties asserted under the

11

Internal Revenue Code are excessive, punitive, improperly stacked, and disproportionate to any harm suffered by failure to file the relevant forms disclosing the accounts. In short, 31 U.S.C. § 5321(a)(5)(C)(i), as written and as applied to Marika, violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, and the penalty should not be enforced for this reason.

WHEREFORE, for all these reasons, Defendant Marika Katholos prays that the Court dismiss the Complaint and bar the United States of America from reduction of the improper penalty assessed against her to judgment. Defendant additionally requests all such further legal and equitable relief to which she may be entitled.

Dated: August 11, 2017

Respectfully submitted,

/s/ Laura L. Gavioli
LAURA L. GAVIOLI
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8079
Facsimile: (972) 584-6162
E-mail: lgavioli@mwe.com

ATTORNEY FOR DEFENDANT
MARIKA KATHOLOS

DM_US 83770946-2.096800.0011