**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FILED
AUG 28 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF N.Y.
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Wolford |
| Plaintiff, | ) | |
| | ) | Mag. Judge Schroeder |
| v. | ) | |
| | ) | |
| MARIKA MARAGHKIS KATHOLOS, | ) | CIVIL ACTION NO.: 17-cv-00531 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING
OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS RE:**

**(1) DR. MARTIN BATLINER (TESTIMONY AND DOCUMENTS);
(2) CONSILIA ANSTALT (TESTIMONY AND DOCUMENTS).**

The United States District Court for the Western District of New York ("District Court") presents its salutations to the Fürstliche Landgericht (Court of Justice), in the principality of Liechtenstein, and requests assistance in obtaining evidence to be used in civil proceedings before this Court. This request is made pursuant to, and in conformity with, Chapter I of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"), to which both the United States and Liechtenstein are parties.

Specifically, the District Court requests assistance in obtaining documents and oral testimony from Consilia Anstalt, a Liechtenstein entity, for use at trial, as well as oral testimony and documents from Dr. Martin Batliner, who has a professional office in Vaduz, Liechtenstein. Both witness are or were associated with the defendant Marika M. Katholos. This Letter of Request is submitted in both English and German.

# SECTION I

**1.    SENDER:**

The Honorable Elizabeth A. Wolford
Judge for the
United States District Court for the Western District of New York
United States District Court
100 State Street
Rochester, New York 14614
United States of America
TEL: + (585) 613-4320
FAX: + (585) 613-4325
wolford@nywd.uscourts.gov

**2.    CENTRAL AUTHORITY OF REQUESTED STATE:**

Fürstliche Landgericht (Court of Justice) of the Principality of
Liechtenstein
  Attention: Jugde lic.iur. Willi Büchel, President of the Court
Spaniagasse 1
9490 Vaduz
Liechtenstein
 Tel. +972 (2) 655 6919
 Fax +972 (2) 655 6887
Email :

**3.    PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED:**

The Honorable Elizabeth A. Wolford
Judge for the
United States District Court for the Western District of New York
United States District Court
100 State Street
Rochester, New York 14614
United States of America
TEL: + (585) 613-4320
FAX: + (585) 613-4325
wolford@nywd.uscourts.gov

*With a Copy to the Parties' Legal Representatives:*

a.    **Plaintiff:**

>    United States of America
>    c/o W. Damon Dennis, Esq.
>    Trial Attorney
>    United States Department of Justice
>    555 4th Street, N.W. (Room 7822)
>    Washington, D.C. 20001
>    Tel +1 202 616-1460
>    Email: w.damon.dennis@usdoj.gov

b.    **Defendant:**

>    Marika M. Katholos
>    c/o Laura L. Gavioli, Esq.
>    McDermott Will & Emery. LLP
>    501 N. Harwood Street, Suite 1900
>    Dallas, TX 75201
>    Tel +1 214 295 8079
>    Email: lgavioli@mwe.com

4.    **SPECIFICATION OF THE DATE BY WHICH THE REQUESTING AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER OF REQUEST.**

Date: It is requested that the documents be transmitted and oral testimony be taken as soon as possible, preferably within 90 days of your receipt of this Letter of Request.

Reasons for Urgency: To ensure that the documents and testimony are received in a timely manner for use at trial in the civil proceedings described below and that trial counsel has sufficient time to utilize information obtained in preparation of their respective cases. Although the trial date is not currently scheduled, it is expected to take place in 2019. Fact discovery, including depositions, is to be completed by November 16, 2018.

//


//


//

## SECTION II

**IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING INFORMATION REGARDING THE INSTANT REQUEST:**

**5.     a. REQUESTING JUDICIAL AUTHORITY (Article 3,a)**

The Honorable Elizabeth A. Wolford
Judge for the
United States District Court for the Western District of New York
United States District Court
100 State Street
Rochester, New York 14614
United States of America
Tel: + (585) 613-4320
Fax: + (585) 613-4325
wolford@nywd.uscourts.gov

**b. TO THE COMPETENT AUTHORITY OF (Article 3,a):**

Fürstliche Landgericht (Court of Justice) of the Principality of Liechtenstein
  Attention: Judge lic.iur. Willi Büchel, President of the Court
Spaniagasse 1
9490 Vaduz
Liechtenstein
Tel. +972 (2) 655 6919
Fax +972 (2) 655 6887

**c. NAMES OF THE CASE AND ANY IDENTIFYING NUMBER**

*United States of America v. Marika M. Katholos, No. 1:17-cv-00531*, United States District Court for the Western District of New York, USA

//


//


//

6. **NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES (Article 3,b):**

    a. **Plaintiff:**

        United States of America
        c/o W. Damon Dennis, Esq.
        Trial Attorney
        United States Department of Justice
        555 4th Street, N.W. (Room 7822)
        Washington, D.C. 20001
        Tel +1 202 616-1460
        Email: w.damon.dennis@usdoj.gov

    b. **Defendant:**

        Marika M. Katholos
        c/o Laura L. Gavioli, Esq.
        McDermott Will & Emery, LLP
        501 N. Harwood Street, Suite 1900
        Dallas, TX 75201
        Tel +1 214 295 8079
        Email: lgavioli@mwe.com

7. **NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS (Article 3,c):**

    a. **Nature of the proceedings**

The plaintiff United States of America brought this civil action under 31 U.S.C. § 3711(g)(4)(C) to collect an outstanding civil assessment, along with associated late-payment penalties and interest, assessed against the defendant Ms. Marika Katholos for her failure to timely report her financial interest in and signature authority over a foreign bank or other financial account during the 2007 calendar year as required by 31 U.S.C. § 5314 and its implementing regulations.

In summary, the United States seeks to prove that Ms. Katholos failed to disclose her foreign bank account at UBS Group AG, *i.e.*, UBS, on a Report of Foreign Bank and Financial Accounts, *i.e.,* an FBAR, for the calendar year 2007 despite Ms. Katholos' obligation to do so pursuant to U.S. law.

This is a civil matter pursuant to U.S. law and carries no criminal liability for Ms. Katholos. As to how "civil or commercial" is to be defined within the context of the Hague Evidence Convention, the Practical Handbook on the Operation of the Evidence Convention clearly states that the term civil or commercial should be "interpreted in an autonomous manner", without just referring to the law of the Requesting State or Requested State. Hague Conference on Private Int'l Law, *Practical Handbook on the Operation of the Evidence Convention* ¶ 50, at 21 (3d ed. 2016) ("Handbook").[1] In addition, the Handbook notes that the term should be interpreted "liberally" and the focus should be on the nature of the cause of action, which in this case is a purely civil matter. Handbook ¶ 50, at 21.

Furthermore, the civil assessment at issue in this matter is imposed against Ms. Marika Katholos pursuant to Title 31 ("Money and Finance") of the United States Code, not Title 26 (the Internal Revenue Code, *i.e.*, the U.S. Tax Code). The civil assessment at issue, which is known as an FBAR assessment, originated in the U.S. Bank Secrecy Act, Pub.L. 91–508, 84 Stat. 1114 (1970); and after the terrorist attacks of September 11, 2001, Congress directed, in the USA Patriot Act, that attempts should be made to improve compliance with these provisions. Section 5321(a) of Title 31 provides for civil compensation for violations of the reporting requirements of section 5314, and section 5321(b)(1) provides that the United States may make that assessment.

In summary, this case serves to cover a civil compensation resulting from the breach of the obligations to report foreign accounts. The U.S. Tax Code is inapplicable to FBAR assessments because such assessment are not considered a "tax liability" as a matter of law. 31 U.S.C.

---

[1]     The Handbook is a reliable source for interpretation and implementation questions related to the Hague Evidence Convention. It was drafted by the Permanent Bureau of the Hague Conference on Private International Law, reviewed by a Special Commission convened to review the practical operation of the Convention, and approved by the Council on General Affairs and Policy of the Hague Conference.

§ 5321(b)(2) (the collection mechanism authorized in the FBAR statute itself is not tax lien or levy but a *civil action to recover a civil assessment*). Indeed, an FBAR is a foreign banking reporting form, related to the record keeping and filing requirements for reportable interests in foreign bank accounts, and is controlled by Title 31, U.S.C., not Title 26. There is no underlying tax with which the FBAR assessment could be linked. The FBAR assessment is not a function of income, is not a property or estate tax determined by value, and is not a sales or excise tax determined by receipts or expenditures. As stated above, 31 U.S.C. § 5321, which authorizes FBAR assessments, is titled "civil" assessments -- not "tax" assessments. This matter therefore qualifies as civil and commercial matter and is within the scope of the Hague Evidence Convention.

### b. Summary of Allegations in the Plaintiff's Complaint

Ms. Katholos, who is a United States citizen residing in Greece, is the beneficial owner of the Storchen Family Foundation and Storchen Finance Limited. Ms. Katholos controls/controlled two UBS bank accounts, including an UBS Account ending 65569. She was involved with the decision-making regarding the performance and investments of an UBS Account ending 65569, and she also instructed UBS to make a transfer from the account to Greece so that she could invest in the Romanian real estate market.

By way of background, in February 2005, the Storchen Family Foundation was formed in Vaduz, Liechtenstein. On March 3, 2005, on the Form A, "Verification of the beneficial owner's identity," Ms. Katholos was identified as one of the beneficial owners of the Storchen Family Foundation for the UBS account ending in 36795. The Form A was signed by members of the board, which included Dr. Martin Batliner. Also on that date, members of the board instructed UBS in the "Basic document for account/custody account relationship (firms, corporations, and

other institutions)" to send all correspondence to Consilia Anstalt in Vaduz, Liechtenstein. English was selected as the preferred language of the correspondence.

On December 23, 2005, Ms. Katholos and others had dinner in Athens, Greece, with UBS client advisors, and discussed a new account and the creation of a Hong Kong entity to be the accountholder. A few days later, on December 29, 2005, a representative from UBS signed the Certificate of Incorporation for Storchen Finance Limited creating an entity that is registered in Hong Kong, with an UBS Account ending 65569. On January 3, 2006, on the Form A, "Verification of the beneficial owner's identity," Ms. Katholos was identified as one of the beneficial owners of the Storchen Finance Limited, for the account ending in 65569. In addition, on said date and on June 1, 2006, Dr. Batliner, as a director, signed several Corporations and Complex Trusts Certifications of Beneficial Owner and Non-US Person Status for the primary and sub-accounts, indicating that Storchen Finance Limited was a corporation organized in Hong Kong.

On January 3, 2006, documents were signed by member(s) of the Board, inter alia, instructing UBS to send all correspondence to Consilia Anstalt in Vaduz. On January 18, 2006, a "Base Document for Non-U.S. Domiciliary Companies for U.S. Tax Withholding" was prepared indicating that the accountholder, Storchen Finance Limited, is domiciled in Hong Kong and wants to invest in U.S. securities. On January 18, 2006, a "Domiciliary Companies decision" sheet was prepared by UBS indicating that the tax haven will be Hong Kong. In February 2006, UBS account ending 36795 was closed when the balance in the account was transferred to the UBS account ending 65569. On February 14, 2006, an asset management agreement instructed UBS to invest

in aggressive securities for the UBS account ending in 65569.S3 and account ending in 265569.S4. The reference currency is in United States' dollars.

The United States contends that Ms. Katholos took steps to conceal or mislead her sources of income by opening the UBS Account ending 65569. The 2007 Report of Foreign Bank and Financial Accounts, *i.e.*, FBAR, assessment against the defendant Marika Katholos remains unpaid, and the total balance due on the penalties, along with statutory additions and interest, pursuant to 31 U.S.C. § 3717, is $4,474,320.29 as of December 2, 2016.

**c.     Summary of Defendant's Answer**

Ms. Katholos contends, *inter alia*, that the administrative record and Complaint fail to establish any factual basis for assertion of a willful Report of Foreign Bank and Financial Accounts, *i.e.*, FBAR, assessment against her.   To provide additional information, Marika Katholos describes the defenses in the case, as follows.

## AFFIRMATIVE DEFENSE NO. 1:
## MARIKA DID NOT ACT WILLFULLY

The administrative record and Complaint fail to establish any factual basis for assertion of a willful FBAR penalty against Marika. 31 U.S.C. § 5321(a)(5)(C) imposes a civil money penalty for willful failures to file certain reports required to be filed under 31 U.S.C. § 5314, including the FBAR. As outlined in the statute, the amount of the willful penalty may be 50 percent of the high balance in the account at the time of the alleged failure to file the FBAR form. On the other hand, if a taxpayer does not act willfully—for example, if she failed to file the FBAR because she did not know the form existed or was required to be filed—the civil money penalty under 31 U.S.C. § 5321 shall not be greater than $10,000.

Willfulness is a required element of the penalty asserted by the Government against Marika. The Government's effort to reduce the FBAR penalties to judgment fails because the

Government cannot meet its heavy burden to establish a necessary element for enforcement of the penalty—that Marika knew of the FBAR filing obligation and willfully failed to file the form for the 2007 tax year.

The Complaint's case for willfulness appears to rest on three major factual allegations, all of which are either incorrect or misleading. First, the Government alleges that Marika was on "inquiry notice" about FBAR reporting because of a 2007 federal income tax return. At the time of the filing of the Complaint, however, the Government possessed information demonstrating that Marika did not sign the 2007 federal income tax return that allegedly put her on "inquiry notice" regarding her FBAR obligations. Further demonstrating that she did not review this return, the 2007 return filed for Marika contains numerous, obvious errors: Marika's name is misspelled and her address is incorrectly given in Elma, New York.

Marika's history of filing U.S. returns since her move to Greece in 1994 demonstrates that she was not fully aware of the relevant U.S. tax rules for reporting income overseas. Prior to 2009, federal tax returns were filed for Marika to report her interests in family assets that generated income in the U.S., such as annuities or rental income from real estate. When there was no U.S. income in a particular year, returns generally were not filed. In many or most cases prior to early 2009, Marika did not see or sign federal tax returns filed for her.

Second, the Internal Revenue Service's ("IRS's") interview with Marika's return preparer Charles Koelemeyer, conducted more than four years after the relevant events. only demonstrates that he knew of FBAR reporting requirements well after the time period at issue. It does not demonstrate that he ever advised Marika about these requirements—or even that he ever spoke to her directly about taxes or U.S. reporting—prior to January 2009. Instead, once Marika learned of the relevant U.S. reporting requirements, she attempted to make a voluntary disclosure to the IRS in February 2009, months before the start of the formal Offshore Voluntary Disclosure

Program. Marika's effort was rejected as untimely because, on information and belief, UBS had delivered her name to the IRS within one week prior to her disclosure.

Finally, the Government alleges that Swiss bankers took actions, including signing forms, to conceal the relevant accounts from U.S. authorities. These are simply not allegations that Marika acted willfully: the allegations describe actions taken by Swiss bankers, not by her and her family. Instead, the long history of Marika and her family in Greece demonstrates that the UBS accounts were not set up for a U.S. tax-avoidance purpose. Marika moved to Greece in 1994, shortly after college, and has been a homemaker and caretaker of her children since that time. Marika's father Theodore Katholos (now deceased) ("Mr. Katholos") immigrated to the U.S. in the mid-1960s with a second-grade education in Greece, and became successful in the painting and contracting business in Buffalo, New York through hard work and determination, not through formal schooling. Mr. Katholos was largely unable to read or write in English. He was very successful in business, particularly given his background, but he lacked sophistication and training in tax matters. In the 1980s, Mr. Katholos seriously considered emigrating back to Greece, and so did Marika. When Mr. Katholos retired in 1997, he had intended to move back to Greece permanently.

The Katholos family set up accounts in Switzerland in 1998, moving their funds from Greek banks because of concerns about privacy and security. They felt there was a great risk that the Greek banks were corrupt, and that there were no true guarantees for deposits. Also, in dealings with Marika's and her husband George's local bank in Greece, there seemed not to be a policy on secrecy. Information on account values was easily discussed (basically, gossiped about) among employees, a great deal of whom were local residents. These concerns only heightened when Marika and George contemplated starting a family. Their first child was born in 1999, shortly after

the Swiss accounts were established. The occurrences of kidnapping are unfortunately not so uncommon in Greece.

In dealings with the Swiss bank, Marika's father Theodore Katholos was the primary decision-maker. Marika had signatory authority because of Mr. Katholos' limited reading and writing skills and because she was the one member of the family located in Europe, with more convenient access to the bank.

In short, the security offered by the Swiss banking system—and not tax avoidance in the U.S.—was the motivating factor in setting up the relevant accounts. Marika's meetings and conversations with Swiss banking advisors are consistent with the purpose of opening the accounts in Switzerland—to ensure privacy and security for Katholos and Maragakis family assets, in contrast to the unstable Greek banking system where these assets had been previously held. There is no factual allegation in the Complaint (other than summary legal assertions) supporting a conclusion that the accounts were established for any U.S. tax purpose.

Further, the Government has failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 8 and 12(b)(6) because it has alleged no facts in the Complaint—beyond summary legal conclusions—that support a finding of willfulness.

Moreover, the administrative record is devoid of any reasoning supporting a finding that Marika acted willfully. In fact, the Internal Revenue Service's guidance regarding mitigation of the FBAR penalty fails to take into account the specific facts and circumstances of each case, and focuses solely on the high balance in the relevant financial accounts. *See* Internal Revenue Manual 4.26.16-1. Accordingly, the IRS assessment of the FBAR penalty against Marika is unreasonable, arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706.

## AFFIRMATIVE DEFENSE NO. 2:
## THE PENALTY ASSESSMENT IS PROCEDURALLY DEFECTIVE

The IRS has been delegated civil enforcement authority over the FBAR. See 31 CFR § 1010.810(g) (referencing a Memorandum of Agreement between the Financial Crimes Enforcement Network ("FinCEN") and the IRS). The IRS has established specific procedures for the examination, approval, and assessment of the FBAR penalty under 31 U.S.C. § 5321. See Internal Revenue Manual 4.26.16 and 4.26.17. For example, a willful FBAR penalty must be reviewed by the SB/SE Counsel FBAR Coordinator, and findings must be made supporting the assertion of the penalty. *See* Internal Revenue Manual 4.26.17.4.3. The taxpayer has the right to administratively appeal an initial determination that the penalty should be assessed, and an IRS group manager must also make findings when approving the penalty. *See* Internal Revenue Manual 4.26.17.4.6. In addition, a series of notices and letters must be sent to the taxpayer before the penalty is assessed. *See* Internal Revenue Manual 4.26.17.

The Government's efforts to collect an FBAR penalty for Marika fail because the IRS's assessment of the FBAR penalty was procedurally defective. Based on the incomplete correspondence and notices that Marika and her counsel have received, it appears that the IRS may not have followed its own procedures in making the assessment of the FBAR penalty. As referenced above, the notices and reports that Marika received contain little to no reasoning supporting a willful FBAR penalty, also rendering the assessment procedurally defective. Because the IRS did not validly assess the FBAR penalty before the expiration of the relevant statute of limitations, the Government cannot reduce this penalty to judgment.

### AFFIRMATIVE DEFENSE NO. 3:
### THE PENALTY IS BARRED BY THE RELEVANT STATUTE OF LIMITATIONS

The deadline for an FBAR to be filed for Marika for the 2007 tax year would have been on or before June 30, 2008. Under 31 U.S.C. § 5321(b)(1), the Government was required to assess any FBAR penalty within six years of June 30, 2008, or by June 30, 2014.

There is no grant of statutory authority for extension of this statutory deadline. In the Complaint, paragraph 38, the Government alleges that the FBAR penalty for 2007 was assessed against Marika on June 15, 2015, after the expiration of the six-year statute of limitations. Accordingly, the Government is barred from collecting the FBAR penalty against Marika for the 2007 tax year because the assessment was made after the expiration of the relevant statute of limitations under 31 U.S.C. § 5321(b)(1).

### AFFIRMATIVE DEFENSE NO. 4: THE PENALTY IS AN EXCESSIVE FINE UNDER THE EIGHTH AMENDMENT

The relevant statutes, 31 U.S.C. § 5321(a) and (b)(1), provide that a willful FBAR penalty of 50 percent of the balance in the relevant financial account may be assessed upon the same funds for each year within a six-year statute of limitations. As written, the statute essentially allows the Government to assess an FBAR penalty of 300 percent of the highest balance of a financial account—three times the entire value of the account.

In addition to the penalty at issue in this suit, the Internal Revenue Service is seeking to assess and collect other civil penalties from Marika under the Internal Revenue Code for the exact same funds at issue here.

The assessed FBAR penalty has been improperly imposed on the entire value of the UBS accounts. A substantial portion of these funds were owned by Marika's husband George Maragakis, and were not taxable or subject to penalties in the United States. George is a Greek citizen and not a U.S. taxpayer. In the late 1990s, the family initially moved their funds out of Greece into accounts held in the names of Marika, George, and Mr. Katholos at a different Swiss bank. In 2004 or thereabouts, these accounts were moved to UBS, also in their individual names. Upon instruction and advice of the Swiss bankers at UBS, the accounts were consolidated in early 2005 into the accounts at issue because the family was advised that this structure would allow for

additional investment opportunities and flexibility. Thus, to the extent the calculation of the FBAR penalty is based upon amounts held in the Storchen accounts but actually owned by George, those amounts were never taxable in the United States, and should be excluded from any penalty calculation.

The FBAR penalty under 31 U.S.C. § 5321 and the penalties asserted under the Internal Revenue Code are excessive, punitive, improperly stacked, and disproportionate to any harm suffered by failure to file the relevant forms disclosing the accounts. In short, 31 U.S.C. § 5321(a)(5)(C)(i), as written and as applied to Marika, violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, and the penalty should not be enforced for this reason.

## 8.    EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE PERFORMED (Article 3,d):

### a.    Evidence to be obtained

The assistance requested of Liechtenstein consists of the following:

1.    Obtaining copies of documents in the possession of Batliner and obtaining oral testimony from Dr. Batliner. The requested documents, including the topics and questions to be utilized in obtaining oral testimony of Dr. Batliner, are described in the attached **Schedule A**.

2.    Obtaining copies of documents in the possession of Consilia Anstalt and obtaining oral testimony from a representative of Consilia Anstalt. The requested documents, including the topics and questions to be utilized in obtaining oral testimony from a corporate designee of Consilia Anstalt, are described in the attached **Schedule B.**

### b.    Purpose of the evidence sought

The documents and oral testimony sought from a representative of Consilia Anstalt and Dr. Batliner go to the core of material allegations and contentions described above and are to be used at trial and other proceedings relating to the matter described. Specifically, the (1) formation of (and the basis for) the Storchen Family Foundation and Storchen Finance Limited for which Dr. Batliner was/is a board member; and (2) history of the financial accounts at issue, specifically UBS

Account ending 65569, including the flow of funds regarding the same; and (3) lengths Ms. Katholos went through to hide her assets in the foreign bank account(s) beyond the United States' purview. So too are communications between Ms. Katholos and various individuals/entities – including Consilia Anstalt and Dr. Batliner – with knowledge of the foreign bank accounts at issue. Consilia Anstalt received all correspondence concerning two UBS bank accounts, including the UBS Account ending 65569. In addition, Dr. Batliner, who, *inter alia*, assisted in structuring the Ms. Katholos's two UBS accounts, and was/is a board member of the Storchen Entities, which are two entities that the defendant controls, and he is a board member of Consilia Anstalt.

Absent the Fürstliche Landgericht's authorization to gather evidence pursuant to the Hague Evidence Convention, the United States would not be able to obtain material evidence from Consilia Anstalt and Dr. Batliner because they are located in Vaduz, Liechtenstein, which is beyond the jurisdiction of U.S. Courts. In short, the information sought in **Schedules A** and **B** to the proposed Letter of Request is highly relevant to this case and important to its resolution. Accordingly, this Court respectfully requests the assistance of Fürstliche Landgericht's in obtaining the documents and testimony referred to above.

## SECTION III

9. **IDENTITY AND ADDRESS OF ANY PERSON TO BE EXAMINED (Article 3,e):**

Dr. Martin Batliner
BATLINER WANGER BATLINER
Attorneys at Law Ltd.
Am Schrägen Weg 2
P.P.Box 105
FL-9490 Vaduz
office@bwb.li
T +423 239 78 78
F +423 239 78 79

//

//

Consilia Anstalt
Städtle 22 LI-9490
Vaduz, Liechtenstein
T +423 388 23 23
F +423 388 23 24

10. **QUESTIONS TO BE PUT TO THE PERSONS TO BE EXAMINED OR STATEMENT OF THE SUBJECT MATTER ABOUT WHICH THEY ARE TO BE EXAMINED (Article 3,f):**

Please refer to **Schedules A** and **B**, attached. The questions contained in those schedules concern the following subject matters (with opportunity for follow up questions), in addition to questions addressing preliminary matters of each witness's knowledge, competence, and relationship with Ms. Katholos:

(1) circumstances leading up to the formation of the Storchen Family Foundation and the Storchen Finance Limited;

(2) the nature of Consilia Anstalt's and Dr. Batliner's relationship with UBS, including anyone acting on UBS's behalf;

(3) the nature of Consilia Anstalt's and Dr. Batliner's relationship with Ms. Katholos, including anyone acting on Ms. Katholos' behalf, relating to her obligations concerning, knowledge of and interest in the financial accounts at issue, specifically, UBS accounts ending 36795 and 65569;

(4) the nature of Consilia Anstalt's and Dr. Batliner's relationship with Ms. Katholos' husband, Georgios Maraghakis, including anyone acting of Mr. Maraghakis' behalf;

(5) the nature of Consilia Anstalt's and Dr. Batliner's knowledge of reporting obligations under U.S. laws concerning foreign accounts;

(6) the nature of Consilia Anstalt's and Dr. Batliner's relationship with Dr. Matthias W. Rickenbach, including anyone acting on his behalf, relating to the Storchen Family Foundation and the Storchen Finance Limited;

(7) the nature of Dr. Batliner involvement with Consilia Anstalt;

(8) Consilia Anstalt's and Dr. Batliner's knowledge of the history of the financial accounts at issue, specifically, UBS accounts ending 36795 and 65569, including the ownership of the funds at issue, and the flow of funds regarding the same, as well as the transaction history for those accounts;

(9) circumstances surrounding Ms. Katholos' interest in the Storchen Family Foundation and the Storchen Finance Limited, as well as her interest in the various Swiss bank accounts for which she has/had a beneficial interest in or signature authority over;

(10) circumstances surrounding why UBS accounts ending 36795 and 65569 were opened and, subsequently, closed;

(11) circumstances surrounding Consilia Anstalt's and Dr. Batliner's knowledge of Basak Holdings and its relationship the Storchen Family Foundation and the Storchen Finance Limited, including Ms. Katholos; and

(12) rights, duties and functions described in the various agreements/understandings between Ms. Katholos, Consilia Anstalt, Dr. Batliner, UBS, Credit Suisse, Storchen Family Foundation and the Storchen Finance Limited, and/or any other financial institution for which Ms. Katholos has/had a beneficial interest in or signature authority over.

## 11. DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED (Article 3,g):

It is requested that copies of the documents or electronic records described in the attached **Schedules A** and **B** be obtained from Dr. Martin Batliner and Consilia Anstalt, respectively.

## 12. ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND SPECIFIC FORM TO BE USED (Article 3,h):

If agreeable to the Fürstliche Landgericht (Court of Justice), in the principality of Liechtenstein, it is hereby requested as follows:

a.      It is requested that the oral testimony of Dr. Batliner and a representative of Consilia Anstalt be taken under affirmation in accordance with the laws of Liechtenstein before an appropriate judicial official of Liechtenstein.

b.      It is further requested that the affirmation be administered, and that the oral examination be conducted, in English.   Alternatively, it is requested that the proceedings be conducted in both German and English.  The requested questions at **Schedules A** through **B** have been provided both in English and German.

c.      The U.S. Department of Justice has authorized the Law Firm of Advokaturbüro Holzhacker Rechtsanwalt to represent its interests in the execution of this Letter of Request in Liechtenstein. Please contact Dr. Gerhard Holzhacker for any questions and notices regarding this Letter of Request and notify the Court that shall be designated to execute this Letter of Request that Dr. Gerhard Holzhacker shall represent the U.S. Department of Justice in connection with any procedures, hearings and motions that shall be taken and heard in connection with the examination of the witnesses and presentation of documents.

Dr. Gerhard Holzhacker
Advokaturbüro Holzhacker
Rechtsanwalt
Josef Rheinberger Strasse 11
Postfach 656
FL-9490 Vaduz
Tel: +423 / 239 66 33
Fax: +423 / 239 66 44
Email: office@holzhacker-lawfirm.com
www.holzhacker-lawfirm.com

     d.     It is requested that the oral testimony be taken through questioning by counsel for

the United States in Liechtenstein, Dr. Gerhard Holzhacker, and attorneys from the United States

Department of Justice, with an opportunity afforded to counsel for the defendant to cross

examine each witness. Dr. Gerhard Holzhacker, as well as the attorneys from the United States

Department of Justice, are authorized to ask any additional and supplementary questions to the

ones set forth in **Schedule** A and **B** to this letter at their own discretion.

     e.     It is requested that counsel for the United States be notified in advance of the time

and place of the proceedings and that counsel for all parties be permitted to attend in person, or

by video or audio teleconference for those not able to attend in person. Dr. Gerhard Holzhacker

shall thereafter inform the other parties by email (as previously agreed by the parties in this

matter) of the procedures to be followed in the proceeding, including such arrangements as are

necessary to attend in person, or by video or audio teleconference.

     f.     It is further requested that the affirmation and oral examination be video-recorded

and also transcribed verbatim stenographically and that the video and transcript be provided to:

The Honorable Elizabeth A. Wolford
Judge for the
United States District Court for the Western District of New York
United States District Court
100 State Street
Rochester, New York 14614
United States of America
TEL: + (585) 613-4320

FAX: + (585) 613-4325
wolford@nywd.uscourts.gov

*With a Copy to the parties' Legal Representatives:*

1.    **Plaintiff:**

      United States of America
      c/o W. Damon Dennis, Esq.
      Trial Attorney
      United States Department of Justice
      555 4th Street, N.W. (Room 7822)
      Washington, D.C. 20001
      Tel +1 202 616-1460
      Email: w.damon.dennis@usdoj.gov

2.    **Defendant:**

      Marika M. Katholos
      c/o Laura L. Gavioli, Esq.
      McDermott Will & Emery, LLP
      501 N. Harwood Street, Suite 1900
      Dallas, TX 75201
      Tel +1 214 295 8079
      Email: lgavioli@mwe.com

      g.    It is further requested that, if any portion of this Request is deemed to be unacceptable under the laws of Liechtenstein, that counsel for the United States, Dr. Gerhard Holzhacker, please be informed of that fact and be allowed to respond substantively prior to the Decision and that Fürstliche Landgericht (Court of Justice), in the principality of Liechtenstein, please comply with as much of the Request as possible.

13.    **SPECIAL METHODS OR PROCEDURES TO BE FOLLOWED (Article 3,i & 9):**

      Please see Item 12 above.

14.    **REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED (Article 7).**

      Please see Item 12(e) above. Please send documents described on **Schedules A and B** to:

The Honorable Elizabeth A. Wolford
Judge for the
United States District Court for the Western District of New York
United States District Court
100 State Street
Rochester, New York 14614
United States of America
TEL: + (585) 613-4320
FAX: + (585) 613-4325
wolford@nywd.uscourts.gov

*With a copy to the parties' Legal Representatives:*

    **a.**    **Plaintiff:**

        United States of America
        c/o W. Damon Dennis, Esq.
        Trial Attorney
        United States Department of Justice
        555 4th Street, N.W. (Room 7822)
        Washington, D.C. 20001
        Tel +1 202 616-1460
        Email: w.damon.dennis@usdoj.gov

    **b.**    **Defendant:**

        Marika M. Katholos
        c/o Laura L. Gavioli, Esq.
        McDermott Will & Emery, LLP
        501 N. Harwood Street, Suite 1900
        Dallas, TX 75201
        Tel +1 214 295 8079
        Email: lgavioli@mwe.com

Regarding oral testimony, please *see* Item 12 above.

**15.**    **REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST (Article 8):**

Please *see* Item 12 above.

**16.**    **SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN (Article 11,b).**

In responding to this Letter of Request, neither Consilia Anstalt nor Dr. Batliner need to

disclose documents and electronic records that constitute communications for which either party

sought for legal advice. This privilege may be waived, however, if the communication has been disclosed to third parties.

17. **THE FEES AND COSTS INCURRED WHICH ARE REIMBURSABLE UNDER THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE CONVENTION WILL BE BORNE BY:**

This Court understands that certain fees and costs incurred in the execution of this Request may be reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention. These fees and costs will be reimbursed by the United States, up to $10,000 USD. Dr. Gerhard Holzhacker should be informed before the costs exceed this amount.

## SECTION IV

This United States District Court expresses its gratitude to the judicial authorities of Liechtenstein for their assistance and courtesy under the terms of the Hague Evidence Convention.

Dated: August 28, 2018
      Rochester, New York

_____
ELIZABETH A. WOLFORD
UNITED STATES DISTRICT JUDGE