UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Sinatra |
| Plaintiff, | ) | |
| | ) | Mag. Judge Schroeder, Jr. |
| v. | ) | |
| | ) | |
| MARIKA MARAGHKIS KATHOLOS, | ) | CIVIL ACTION NO.: 17-cv-00531 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF UNITED STATES' OPPOSITION TO DEFENDANT'S OUT-OF-TIME MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DESIGNATE A TAX LAW EXPERT**

The plaintiff United States of America hereby opposes the defendant Marika Katholos's motion to strike certain allegations in the complaint that she argues run counter to a stipulated judgment by the United States Tax Court in a related case, or in the alternative, to request permission to designate an expert to explain the Tax Court stipulated decision.  Doc. 81 ("Motion to Strike").  But the stipulated Tax Court decision expressly states that it is "[p]ursuant to the agreement of the parties" and does not include any factual stipulations about items of income or deductions or the correctness of the defendant's income tax returns.  The defendant, nonetheless, relies on the stipulated Tax Court decision to support an untimely motion to strike, which is threaded with excessive logical leaps that ultimately lead to a preposterous conclusion.  Katholos argues that the United States is somehow precluded from offering evidence related to her tax returns[1] to support its willfulness argument that she was on inquiry notice of her duty to file an FBAR or took steps to conceal her foreign assets, when the issues and the government's

---

[1] Oddly, the defendant moves to strike evidence related to a return for the 2007 income tax year, but she maintains that she did not sign a return for that year.

burden of proof in the Tax Court case and this case differ significantly.  Because the issues and burden of proof differ, the collateral estoppel effect that Katholos's motion touts is virtually nonexistent.  For these reasons, described in more detail below, the defendant's motion to strike should be denied.

The United States also opposes the defendant's alternative request to designate a tax law expert out of time.  The Motion to Strike states that the purpose of the expert is "to explain to the trier of fact the underlying rationale and the necessary implications of the holdings of the USTC's stipulated decision and demonstrate their direct conflict with the aforementioned allegations."  Motion to Strike at 14.  Such testimony would equate to legal arguments that are outside the proper scope of expert testimony.  Further, such testimony relates only tangentially to the core issue in this case:  whether the defendant willfully failed to file a Report of Foreign Bank and Financial Accounts ("FBAR") for calendar year 2007 documenting her interest in and control over the UBS account ending in 65569.  A late-designated expert witness would not only result in testimony whose importance is tenuous at best and probably inadmissible, but it would also cause prejudice to the United States because it will have to prepare to meet the new testimony.  *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

In short, the Motion to Strike exaggerates the impact of the stipulated Tax Court decision on this case; there is no issue preclusion here to warrant, even remotely, a striking of the complaint's allegations or the untimely designation of a tax law expert.

## I. Background

### A. *This Case: Ms. Katholos's Liability for a Willful FBAR Penalty*

The United States filed a complaint in this case on June 13, 2017, and filed an amended complaint with an additional redaction on August 10, 2017. (Docs. 1, 6.) Through this action, the United States is seeking to collect outstanding civil penalties assessed against the defendant for her willful failure to timely report her financial interest in and signature authority over a foreign account during the 2007 calendar year as required by 31 U.S.C. § 5314 and its implementing regulations.

Section 5314 of Title 31 derives from the Bank Secrecy Act. In 1970 Congress passed the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 at 12, to combat the "serious and widespread use of foreign financial facilities . . . for the purpose of violating American law." H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397. The legislative history behind the Act reveals that Congress was concerned about "wealthy" Americans' use of "secret foreign financial facilities, particularly in Switzerland" as "a convenient means of evading U.S. taxes." 1970 U.S.C.C.A.N. at 4397-98.

To prevent this activity from occurring, the Act requires United States persons who have a relationship with foreign financial institutions to report that relationship to the United States government. *See* 31 U.S.C. § 5314(a); *see also* 31 C.F.R. § 1010.350(a) ("Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists . . . .").

When the dollar value of a U.S. person's foreign accounts exceeds $10,000, she must file an FBAR yearly to report her financial interest in, or signatory or other authority over, the

foreign accounts. *See* 31 C.F.R. § 1010.306(c). For calendar year 2007, the FBAR was the Form TD F 90-22.1, Report of Foreign Bank and Financial Authority, and it was due on June 30, 2008. *Id.* §§ 1010.350(a), 1010.306(c); *see also* Press Release, IRS, Foreign Financial Accounts Reporting Requirements (Feb. 2007), FS-2007-15, https://www.irs.gov/pub/irs-news/fs-07-15.pdf [https://perma.cc/7WQB-YGLN] (hereinafter "2007 IRS Press Release"). The requirement to file an FBAR did not depend upon whether the foreign account generated U.S.-taxable income. *See* 2007 IRS Press Release.

The FBAR is not submitted alongside one's income tax return. The Form 1040 individual income tax return, however, contains questions pertaining to whether the taxpayer has an interest in or signatory or other authority over foreign accounts and refers the taxpayer to instructions concerning the FBAR. *See* 2007 Form 1040, Schedule B, Line 7.

Congress accorded the IRS authority to impose a civil penalty upon individuals whom the statutes and regulations require to file an FBAR and who fail to do so. 31 U.S.C. § 5321(a)(5)(A). In the case of a willful violation of this requirement, the IRS must calculate the civil penalty as the greater of $100,000 or 50% of the value of the balance in the account at the time of the violation. *Id.* § 5321(a)(5)(A)-(D).

Willfulness in the FBAR context is not statutorily defined and has been consistently held to include recklessness. *See United States v. Horowitz*, 978 F.3d 80, 87-89 (4th Cir. 2020); *Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019); *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018); *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012) ("*Williams II*"), *rev'g* No. 09-CV-437, 2010 WL 3473311, at *1 (E.D. Va. Sept. 1, 2010) ("*Williams I*"). Courts generally apply an objective standard to recklessness in the civil context. *See Horowitz*, 978 F.3d at 89 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)) ("In the

4

civil context, 'recklessness' encompasses an objective standard — specifically, '[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"). With regard to the failure to file an FBAR, "willfulness based on recklessness is established if the defendant '(1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily.'" *Id.* (quoting *Bedrosian*, 912 F.3d at 153); *see* 31 U.S.C. § 5321(a)(5)(C). Additionally, "[w]illful blindness—as where a defendant consciously chooses to avoid learning about reporting requirements—also constitutes a form of recklessness as to the FBAR-reporting requirement." *United States v. DeMauro*, 483 F.Supp. 3d 68, 82 (D.N.H. 2020). In sum, a knowing or intentional failure to file a required FBAR is not necessary for the failure to be willful under 31 U.S.C. § 5321(a)(5)(C). Rather, a U.S. person's *reckless* failure to report her foreign financial account is enough to constitute a willful violation under § 5321(a)(5)(C).

Moreover, in civil FBAR suits, it is well established that the United States bears the burden of proving its case by a preponderance of the evidence.[2] *See United States v. Garrity*, 304 F. Supp. 3d 267, 270 (D. Conn. 2018) ("Using these principles, every court that has

---

[2] This is contrasted with the government's higher burden of proof in the Tax Court case. To prevail on the issue of whether Katholos were subject to fraud penalties under 26 U.S.C. § 6663, the IRS would have had to show both that Katholos underpaid her taxes and that the underpayment was attributable to fraud. *See* 26 U.S.C. § 6663(a); *see also Kramer v. Comm'r*, T.C.M. (RIA) 2021-016, at *26 (T.C. 2021). The IRS may prove fraud, in turn, by showing "that the taxpayer *intended* to evade taxes known to be owing by conduct *intended* to conceal, mislead or otherwise prevent the collection of taxes." *DiLeo v. Comm'r*, 96 T.C. 858, 874 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992) (emphasis added). In the Tax Court, fraud must be proved by clear and convincing evidence. *See id.* at 885.

In this case, however, the United States is not required to prove that Katholos fraudulently intended to refrain from filing a timely and accurate FBAR for 2007. On the contrary, it need only show by a preponderance of the evidence that Katholos's failure to file an FBAR for the year and account at issue was willful.

answered the question before me has held that the preponderance of the evidence standard governs suits by the government to recover civil FBAR penalties.").

Here, the United States maintains that the defendant willfully failed to timely report her interest in the UBS Account No. 65569, which had a balance that exceeded $10,000, for calendar year 2007. In accordance with 31 U.S.C. § 5321(a)(5)(C), a delegate of the Secretary of the Treasury assessed an FBAR penalty in the amount of $4,474,320.29, plus statutory additions and interest from December 2, 2016. Katholos maintains that her failure to file an FBAR for calendar year 2007 was not willful. *See* Doc. 32 at 6-9.

The time frame for designating an expert in this case has long passed, and the defendant has failed to comply with her obligation to identify any designated experts under both Federal Rules of Civil Procedure 26 and 33. The United States served interrogatories upon Katholos on January 19, 2018, which included as Interrogatory No. 3 a request that the defendant:

> Identify each person whom you expect to call as an expert witness at trial, including within your answer the information required to be provided pursuant to Rule 26 of the Federal Rules of Civil Procedure, the subject matter on which the expert is expected to testify, the substance of the findings and opinions to which the expert is expected to testify, a summary of the grounds for each opinion, any available list of publications written by the expert, and any written report made by the expert concerning the expert's findings and opinions.

The defendant responded to the United States' interrogatories on March 9, 2018, stating that disclosure of experts was premature and that "Marika will make these disclosures in due course in compliance with the Court's Order." *See* Exh. 1, Defendant's Interrogatory Responses, Interrogatory No. 3. Under Fed. R. Civ. P. 26(e), the defendant has a duty to supplement her response to the interrogatory in a timely manner and has not done so. *See also* Fed. R. Civ. P. 37(c). Further, the most recently extended deadline for the defendant's disclosure of expert witnesses was December 27, 2020. Doc. 63. The Court's order setting this deadline stated that "[n]o further extensions will be granted absent a formal motion demonstrated exceptional

circumstances." Doc. 63. The defendant should not be allowed to belatedly attempt to designate an expert and has not shown that exceptional circumstances are present here.

Future deadlines include a dispositive motions deadline currently set for July 16, 2021. *See* Doc. 79. No trial date is currently in place.

### B. *The Tax Court Case*

Katholos filed a petition with the Tax Court in August 2016 to contest the IRS's determination that she underpaid her federal income taxes for 2006, 2007, and 2008 and the IRS's assessment of fraud penalties under 26 U.S.C. § 6663 for those years. On April 21, 2021, the Tax Court entered a judgment in accordance with the stipulated agreement between the parties. *See* Motion to Strike, Exhibit A. The decision states that "there are deficiencies in income tax, additions to tax, and penalties due from petitioner as follows," and further states that—of years 2006, 2007, and 2008—a deficiency in the amount of $32,371.00 is due for 2008. In this regard, the parties made the following stipulations:

> It is further stipulated that none of the exceptions to the limitations on assessments set forth in I.R.C. § 6501(c) applies to any of petitioner's tax years 2006, 2007, and 2008.
>
> It is further stipulated that, effective upon the entry of this decision by the Court, petitioner voluntarily and unilaterally waives the affirmative defense of the expiration of the assessment limitations period of I.R.C. § 6501 only for 2008 and only to enable respondent to assess the amount of the stipulated deficiency for that year and interest thereon as provided by law.

By letter dated January 18, 2021, Katholos made a "qualified offer" pursuant to 26 U.S.C. § 7430 to settle the Tax Court matter. *See* Ex. 2. The offer stated: "For avoidance of doubt, this offer does not include or contemplate resolution of matters under Title 31 of the United States Code." The IRS accepted Katholos's offer to settle and the parties entered a

stipulated judgment in the U.S. Tax Court, substantially in the form of Katholos's offer to settle. *Compare* Ex. 2; Motion to Strike Ex. A.

## II. Argument

A. *The Court should deny the defendant's Motion to Strike certain allegations in the complaint.*

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To prevail on a motion to strike, the movant must show: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Jalayer v. Stigliano*, 420 F. Supp. 3d 58, 64 (E.D.N.Y. 2018) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). While it is within the Court's discretion to grant or deny a motion to strike, a court "should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Comm. United Corp.*, 551 F.2d 887, 893 (2d. Cir. 1976); *see also Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) ("If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion . . . ."). Such motions are generally disfavored and should be rarely granted. *See Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (listing cases); *see also Crespo v. New York City Transit Auth.*, No. 01-CV-0671, 2002 WL 398805, at *11 (E.D.N.Y. Jan. 7, 2002) (quoting *Lennon v. Seaman*, 63 F.Supp.2d 428, 446 (S.D.N.Y.1999)) ("[M]otions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.'").

The defendant's motion to strike certain allegations from the United States' complaint should be denied because it does not meet this standard. The defendant misconstrues the rule of issue preclusion and the Federal Rules of Evidence. The stipulated Tax Court decision, which is

the result of a settlement of tangentially related claims, has no preclusive effect on the United States' factual allegations in this case. As a result, the defendant's motion fails because there is admissible evidence in support of the allegations she seeks to strike, the allegations bear on the relevant issues, and permitting those allegations to stand will not be prejudicial to the movant. Further, the defendant's exaggeration of the effect of the Tax Court decision is manifest in the substantive arguments of the Motion to Strike. A substantial portion of her arguments centers on criticism of the specific language in the allegations (*see* Motion to Strike at 8 (Part II.A.ii),10 (iii), 11-12 (vi)), rather than any factual findings in the Tax Court decision.

i. The stipulated Tax Court decision does not have a preclusive effect and thus the motion to strike is meritless.

The defendant argues that the stipulated Tax Court decision precludes the government from making certain factual allegations in this case; however, the defendant misconstrues the law of collateral estoppel or issue preclusion. Issue preclusion "prevents a party from relitigating only those 'issues *actually adjudicated*, and essential to the judgment, in a prior litigation.'" *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 536 (5th Cir. 1978)) (emphasis in original).

A judgment in a prior proceeding bars a party and its privies from relitigating an issue if, and only if: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999) (citing *Local 32B-32J Serv. Emps. Int'l Union v. NLRB*, 982 F.2d 845, 849 (2d Cir. 1993)).

Because the Tax Court decision lacks stipulated facts contrary to the United States' complaint, the defendant makes bold conclusory leaps to manufacture a collateral estoppel

9

scenario. But the stipulated order resolving the U.S. Tax Court case has no preclusive effect on this case. First, the defendant has not shown that the allegations she wishes to have stricken are identical to any issues the arose in the Tax Court case. For example, Katholos argues that "[t]he allegation that Ms. Katholos 'failed to include earnings and interest income from the UBS account' in her taxable income for 2006 and 2007 directly contravenes the USTC's decision ordering and deciding there are no income tax deficiencies due from her for those years." Motion to Strike at 8; *see also id.* at 11 (arguing that similar allegations relating to tax years 2007 and 2008 should be stricken). While it is true that the stipulated Tax Court decision states that there is no deficiency in income tax for 2006 or 2007, there were no findings or stipulations about whether Katholos failed to include earnings and interest income from the UBS account on her 2006 or 2007 return. Moreover, the determination of whether there were deficiencies in tax under 26 U.S.C. § 6211 involve separate issues entirely. There are, for instance, innumerable combinations of income, deductions, losses, and credits, as well as other issues, that may cause a taxpayer not to owe income tax for a particular year. From a determination that a taxpayer does not owe tax, it does not necessarily follow that the taxpayer did or did not report any specific items of income on her original tax return. The issues are simply not the same.

Similarly, the defendant strains logic by arguing, unavailingly, that the stipulated Tax Court decision provides "confirmation of the falsity" of the allegation that "'Ms. Katholos checked the box "No" for both questions,' referring to 'questions on lines 7a and 8 relating to interest in or signature authority over foreign accounts and trusts' contained in 'Part III of Schedule B' of her 'Form 1040, [ . . .] for tax years 2006 and 2007.'" Motion to Strike at 8. Even though the Tax Court stipulated decision states that "none of the exceptions to the limitations on assessments set forth in . . . [26 U.S.C.] § 6501(c) applies to any of petitioner's tax

years," (Motion to Strike, Exh. A), the allegation that Katholos checked the box "No" on her 2007 return Schedule B was not determined—the issues are not even the same. Section 6501 requires the "intent to evade tax." 26 U.S.C. § 6501(c). The relevant state of mind for liability for an FBAR civil penalty, however, is willfulness, which differs from a specific intent to evade tax. Again, the issues at hand are simply not the same.

    Second, the issues the defendant raises were not actually decided by the Tax Court. If an issue was never raised before the Tax Court and was not actually decided by the Tax Court, issue preclusion does not apply. *See Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 97-98 (2d Cir. 2012); *see also Lipsky*, 551 F.2d at 894 (listing cases) (stating that "a prior judgment can only be introduced in a later trial for collateral estoppel purposes if the issues sought to be precluded were actually adjudicated in the prior trial."). Here, the stipulated decision entered in the Tax Court reflects the parties' agreement rather than the Court's judgment on the merits. *See, e.g.*, *In re Diaz*, 580 B.R. 238, 245 (N.D. Ill. 2017) (quoting *People Who Care v. Rockford Bd. Of Educ.*, 68 F.3d 172, 178 (7th Cir. 1995) ("[C]ourts are wary of the conclusion that matters agreed upon by the parties support issue preclusion, because the 'issues underlying a consent judgment generally are neither litigated nor essential to the judgment.'").

    Third, the allegations the defendant seeks to strike from the complaint were not necessary to support a valid and final judgment on the merits in the Tax Court because the stipulated judgment is based on a compromise and the Tax Court did not enter any findings of fact or provide any analysis. So even if the Court were to consider issue preclusion of certain factual findings in the Tax Court decision, none are present. *See, e.g., In re Detrano*, 266 B.R. 282, 291-92 (Bankr. E.D.N.Y. 2001) (finding that a debtor would not be precluded from arguing that he did not commit fraud in a subsequent bankruptcy dischargeability proceeding because in

consenting to a prior judgment, the debtor did not stipulate to any underlying facts that would establish nondischargeability). And in fact, there is no evidence that the parties themselves ever stipulated to any facts regarding items of income and deductions or the correctness of the defendant's returns in settling the Tax Court case.

The Second Circuit has held that a settlement will not have preclusive effect unless that was the intent of the parties to the settlement. *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992). Here, the stipulated decision entered in the Tax Court resulted from an agreement between the parties rather than an adjudication of the merits. The stipulated decision does not recite any facts that could be preclusive in this case. Most importantly, the stipulation evidences no intent of the parties to be precluded from presenting the issues or any potential underlying facts in other litigation. In fact, in her letter offering to settle the Tax Court action on terms the same as or substantially the same as those recited in the stipulation, Katholos's attorney made the following representation: "For the avoidance of doubt, this offer does not include or contemplate resolution of matters under Title 31 of the United States Code." (*See* Ex. 2.) The parties did not intend any preclusive effect from the stipulated decision entered in the Tax Court case.

Because the stipulated decision does not have a preclusive effect, the defendant's motion to strike on that basis is meritless. The defendant cannot meet the standard under Fed. R. Civ. P. 12(f) because the United States' allegations are supported by admissible evidence, relevant to the claims at issue, and are not scandalous or prejudicial. The Court should not strike any allegations from the government's complaint.

ii. The United States' allegations are supported by admissible evidence and bear on the relevant issues.

The Court should not grant the motion to strike portions of the complaint because the defendant's arguments that such allegations are immaterial or inadmissible are incorrect. "Rule 12(f) should be construed strictly against striking portions of the pleadings on the grounds of immateriality." *Lipsky*, 551 F.2d at 894 (citing *Nagler v. Admiral Corp.*, 248 F.2d 319, 322 (2d Cir. 1957); *Atlantic City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 620, 627 (S.D.N.Y. 1962)). The portions of the complaint that the defendant seeks to have stricken are relevant to the United States' claims against Katholos and supported by admissible evidence.

As discussed above, to prove its claim against Katholos, the United States must show that the she (1) had a financial interest in, or signatory or other authority over, a foreign account or accounts during the year at issue with a value of $10,000 or more and (2) willfully failed to file the FBAR form.

In determining whether a defendant willfully failed to file an FBAR form, Courts must typically rely on circumstantial evidence, including "drawing inferences through 'conduct meant to conceal or mislead sources of income or other financial information.'" *See United States v. Ott*, 441 F. Supp. 3d 521, 529 (E.D. Mich. 2020) (citing *United States v. McBride*, 908 F. Supp. 2d 1186, 1205 (citing *United States v. Sturman*, 951 F.2d 1466, 1476-77 (6th Cir. 1991))). Among others, Courts have considered factors such as whether a defendant concealed the foreign account from her tax return preparer, filed tax returns on which the box on Part III of Schedule B was checked "No" to indicate that the defendant did not have a foreign account, or failed to report taxable income earned from the foreign account on tax returns for the year at issue or other years. *See United States v. DeMauro*, 483 F. Supp. 3d 68, 87 (D.N.H. 2020) (defendant's "purported failure to seek advice from tax professionals or attorneys," despite relying on them

for other advice, was evidence that she "acted with willful blindness."); *United States v. Flume*, 390 F. Supp. 3d 847, 857 (S.D. Tex. 2019) (defendant "acted with extreme recklessness by failing to review his tax returns before signing them"); *Flume*, 390 F. Supp. 3d at 857 ("defendant's failure to inform his accountant about the existence of a foreign account is a strong indicator of a conscious intent to violate the law."); *McBride*, 908 F. Supp. 2d at 1208 (quoting *Thomas v. UBS AG*, No. 11C4798, 2012 WL 2396866, *5 n. 2 (N.D.Ill. Jun. 21, 2012)) ("The simple yes-or-no question of Schedule B makes it inconceivable that [a taxpayer] could have misinterpreted this question."); *Ott*, 441 F. Supp. 3d at 529 (quoting *Sturman*, 951 F.2d at 1477) ("'[i]t is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms,' including the Schedule B language referring the taxpayer to FBAR filing requirements."); *Ott*, 442 F. Supp. 3d at 529 (defendant "testified that no interest, dividends, or capital gains from the foreign Canadian accounts were reflected in his tax returns.").

The United States' allegations that the defendant seeks to have stricken from the complaint go directly to these factors that Courts typically evaluate in willful FBAR cases. Thus, the defendant fails to meet another element of the test for whether allegations should be stricken.

    iii.   The United States' allegations are not scandalous or prejudicial to the defendant.

For a motion to strike allegedly "scandalous" material, a "scandalous allegation" has been described as "one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the Court." *Cabble v. Rollieson*, No. 04-cv-9413, 2006 U.S. Dist. LEXIS 7385, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006). The defendant argues that the government's allegations regarding her tax filings "depict her as a tax scofflaw" and that such allegations are prejudicial. However, as discussed above, the allegations

in question speak directly to the factors that Courts generally consider when evaluating the willfulness of a defendant's failure to timely file the FBAR.  The facts alleged are relevant to the United States' claims against the defendant, they do not reflect unnecessarily on her moral character or use disparaging language.  The allegations are not scandalous, and this is not a basis for the Court to strike the allegations in the United States' complaint.  The defendant's untimely motion to strike should be denied.

B. *The Court should not allow the defendant's alternative request for a tax law expert to offer an opinion about the legal effect of the Tax Court decision.*

The United States likewise opposes the defendant's alternative request for leave to designate a tax law expert out of time, because the stated purpose of the expert would be to provide legal conclusions, which is plainly outside the scope of expert testimony under Fed. R. Evid. 702.  *See, e.g.*, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) (mentioning the Second Circuit's "longstanding rule that expert testimony on issues of domestic law is not to be considered").  This reason alone is sufficient to deny the Motion to Strike's alternative request for an expert.

Generally, when analyzing the propriety of a preclusion order for expert testimony, courts in this circuit consider the following: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *see Lidle v. Cirrus Design Corp.*, No. 08 CIV. 1253 BSJ/HBP, 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009) ("Although *Softel* was decided in the context of an appeal from a preclusion order, it has also been applied by district courts in assessing the propriety of a preclusion order.").

Here, Katholos seeks a tax law expert "to explain to the trier of fact the underlying rationale and the necessary implications of the holdings of the USTC's stipulated decision and demonstrate their direct conflict with" the complaint allegations identified in the Motion to Strike.  Motion to Strike at 14 of 16.  Her explanation for failing to comply with the deadline for designating an expert is that "[b]ecause the USTC entered its stipulated decision on April 23, 2021, the defendant could not possibly have adhered to the deadline for designating an expert to explain the proper construction of that decision." *Id.*  This reasoning—though facially valid—supports the conclusion that the purpose of the tax law expert is to offer legal conclusions, which is outside the boundaries of expert testimony's permissible scope.

The importance of such testimony is minimal and would likely be inadmissible because it would involve matters of domestic tax law.  It is well established that "the testimony of an expert on matters of domestic law is inadmissible for *any* purpose." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (emphasis in original) (quoting *Music Sales Corp. v. Morris*, 73 F.Supp.2d 364, 381 (S.D.N.Y. 1999)).  While under Federal Rule of Evidence 702 an expert may provide an opinion to help the factfinder understand a fact in issue, the expert "may not give testimony stating ultimate legal conclusions based on those facts." *Id.* (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991)).

The case *Marx & Company, Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977), is instructive on this point.  In that case, the Second Circuit held that the district court erred in allowing an expert witness to offer his opinion concerning the legal obligations of the parties to a contract in a securities transaction.  *Marx*, 550 F.2d at 508.  The court stated that, rather than testifying concerning "practices in the securities business, on which [the witness] was qualified as an expert," he instead offered "legal opinions as to the meaning of the contract terms at issue."

16

*Id.* at 509.  The court noted that "it would not have been possible to render this testimony admissible by qualifying [the witness] as an 'expert in contract law'" because "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Id.* at 509-10; *see also Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) ("It was not error to refuse to permit . . . an attorney . . . to testify as an expert witness as to the legal significance of the various papers signed by Hammond and Loeb on June 1, 1962. The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.").  Here, on the contrary,  Katholos seeks to designate a tax law expert to testify concerning the *legal effect* of the Tax Court decision on this case.  Such testimony is plainly inadmissible, for "there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law." *Marx*, 550 F.2d at 512 ("The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law.").

  Furthermore, if Katholos were allowed to introduce an expert at this juncture, the United States would be prejudiced because it would need to address the new testimony of the expert. Additional time would be needed to review the expert report, depose the expert, and determine whether a rebuttal expert is warranted.  *See, e.g.*, *Sealed Plaintiff No. 1 v. Sealed Defendant No. 1*, 221 F.R.D. 367, 369 (N.D.N.Y. 2004) ("[A] greater delay would be caused because defendants would need time to review the expert report, depose the expert, and possibly retain a rebuttal expert.").

  Ultimately, an expert as described in the Motion to Strike would cause more delay than benefit in this case.  The anticipated testimony would be inadmissible because it would likely involve commentary on domestic law.  Further, the Tax Court decision relates tangentially to the

issue of Katholos's liability for an FBAR civil penalty. In an attempt to recalibrate the focal point of this case in her favor, Katholos argues that because the Complaint contains a few allegations concerning the income tax years that were at issue in the Tax Court case, this case suddenly hinges on the liability of Ms. Katholos for a deficiency in income taxes. These allegations, though relevant, are not dispositive indicators of Ms. Katholos's willfulness in failing to timely file an FBAR for taxable year 2007.

### III. Conclusion

For the foregoing reasons, the defendant's motion to strike and, in the alternative, be allowed to designate an expert out of time should be denied.

//

//

//

//

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Marie E. Wicks*
*/s/ Angela R. Foster*
MARIE E. WICKS
ANGELA R. FOSTER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-0461 (v) (Wicks)
202-616-9183 (v) (Foster)
202-514-5238 (f)
Marie.E.Wicks@usdoj.gov
Angela.R.Foster@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of June, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

                                            /s/ Angela R. Foster
                                            ANGELA R. FOSTER
                                            *Trial Attorney*